**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

| | |
|---|---|
| ALAN L. SYNDER, | |
| Claimant, | No. 19-CV-134-LRR |
| vs. | |
| ANDREW M. SAUL, | **REPORT AND** |
| Commissioner of Social Security, | **RECOMMENDATION** |
| Defendant. | |

_____

Alan L. Snyder ("Claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. Sections 401-34. Claimant contends that the Administrative Law Judge ("ALJ") erred in determining that he was not disabled. For the reasons that follow, I recommend that the Commissioner's decision be **affirmed in part and reversed and remanded in part**.

## I.  BACKGROUND

I adopt the facts set forth in the Parties' Joint Statement of Facts (Doc. 9) and only summarize the pertinent facts here. Claimant was born November 20, 1968. (AR[1] at 200.) Claimant has at least a high school education and is able to communicate in English. (*Id.* at 24, 236.) He allegedly became disabled due to insomnia and a cognitive disability or mild cognitive impairment. (*Id.* at 235.) Claimant's onset of disability date was May

_____

[1] "AR" cites refer to pages in the Administrative Record.

16, 2014. (*Id.* at 200.) Claimant filed an application for DIB on March 27, 2016. (*Id.* at 15.) His claim was denied originally and on reconsideration. (*Id.* at 120-23, 126-29.) A video hearing was held on October 15, 2018, with Claimant and his attorney, Corbett Luedeman, in Coralville, Iowa and ALJ Michael Comisky and vocational expert ("VE") Jennifer Ruhnke in Kansas City, Missouri. (*Id.* at 52-80.) Claimant and the VE testified. (*Id.* at 56-79.) The ALJ issued an unfavorable decision on November 16, 2018. (*Id.* at 15-25.)

Claimant requested review and the Appeals Council denied review on October 1, 2019. (*Id.* at 1-5.) Accordingly, the ALJ's decision stands as the final administrative ruling in the matter and became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

On December 5, 2019, Claimant timely filed his complaint in this Court. (Doc. 1.) On July 7, 2020, all briefing was completed and the Honorable Linda R. Reade referred the case to me for a Report and Recommendation.

## II. *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant has a disability when, due to physical or mental impairments, the claimant

> is not only unable to do [the claimant's] previous work but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A claimant is not disabled if the claimant is able to do work that exists in the national economy but is unemployed due to an inability

to find work, lack of options in the local area, technological changes in a particular industry, economic downturns, employer hiring practices, or other factors. 20 C.F.R. § 404.1566(c).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). At steps one through four, the claimant has the burden to prove he or she is disabled; at step five, the burden shifts to the Commissioner to prove there are jobs available in the national economy. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009).

At step one, the ALJ will consider whether a claimant is engaged in "substantial gainful activity." *Id.* If so, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). "Substantial activity is significant physical or mental work that is done on a full- or part-time basis. Gainful activity is simply work that is done for compensation." *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (citing *Comstock v. Chater*, 91 F.3d 1143, 1145 (8th Cir. 1996); 20 C.F.R. § 416.972(a),(b)).

If the claimant is not engaged in substantial gainful activity, at step two, the ALJ decides if the claimant's impairments are severe. 20 C.F.R. § 416.920(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. *Id.* An impairment is not severe if it does not significantly limit a claimant's "physical or mental ability to do basic work activities." *Id.* § 416.920(c). The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987) (quoting 20 C.F.R. §§ 404.1521(b), 416.921(b)). These include

> (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple

instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.

*Id.* (quotation omitted) (numbers added; internal brackets omitted).

If the claimant has a severe impairment, at step three, the ALJ will determine the medical severity of the impairment. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment meets or equals one of the impairments listed in the regulations ("the listings"), then "the claimant is presumptively disabled without regard to age, education, and work experience." *Tate v. Apfel*, 167 F.3d 1191, 1196 (8th Cir. 1999) (quotation omitted).

If the claimant's impairment is severe, but it does not meet or equal an impairment in the listings, at step four, the ALJ will assess the claimant's residual functional capacity ("RFC") and the demands of the claimant's past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). RFC is what the claimant can still do despite his or her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing 20 C.F.R. §§ 404.1545(a), 416.945(a)). RFC is based on all relevant evidence and the claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). "Past relevant work" is any work the claimant performed within the fifteen years prior to his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 416.960(b)(1). If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

At step five, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *Id.* §§ 416.920(a)(4)(v), 416.960(c)(2). The ALJ must show not only that the claimant's

4

RFC will allow the claimant to do other work, but also that other work exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591 (citation omitted).

## A.    *The ALJ'S Findings*

The ALJ made the following findings at each step of the five-step process regarding Claimant's disability status.   As a threshold matter, the ALJ found that Claimant met the insured status requirements of the Social Security Act through December 31, 2019.  (AR at 17.)

At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since his alleged onset of disability date of May 16, 2014.  (*Id.*)  Claimant had worked after his alleged onset of disability date, but the ALJ determined that the work should not be considered substantial gainful activity.  (*Id.*)

At step two, the ALJ found that Claimant suffered from the following severe impairments: status post-rectal cancer, mild cognitive impairment, obstructive sleep apnea, sleep disorders, and bowel and bladder urgency. (*Id.*)  The ALJ found Claimant's hypertension and cardiac arrhythmias to be nonsevere impairments.  (*Id.* at 18.)

At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment listed in the regulations, either when considered singly or in combination.  (*Id.*)

The ALJ evaluated Claimant's claims under listings 13.18 (cancers of the large intestine) and 12.02 (neurocognitive disorders).  (*Id.*)

At step four, the ALJ found that Claimant had the following RFC:

[T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following additional limitations. He should avoid concentrated exposure to high temperature work environments and work at unprotected heights or around dangerous machinery. He should not drive equipment as a sleep disorder precaution in a workplace setting. He can understand, remember, and carry out simple work instructions and tasks at an SVP 2 level. He should not do fast paced

5

assemblyline [sic] or piecework types of job duties. He should not do customer service types of job duties. He should not do teamwork types of job duties. He can have frequent contact with co-workers, supervisors, and the general-public.

(*Id.* at 19.) The ALJ also found that Claimant was unable to perform his past relevant work. (*Id.* at 23.) At step five, the ALJ found there were jobs that existed in significant numbers in the national economy Claimant could perform, including office helper, folding machine operator, and mail clerk. (*Id.* at 24.) Therefore, the ALJ concluded that Claimant was not disabled. (*Id.* at 25.)

## B. *The Substantial Evidence Standard*

The ALJ's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Moore*, 572 F.3d at 522. "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law. . . . [T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotations omitted). Thus, a court cannot disturb an ALJ's decision unless it falls outside this available "zone of choice" within which the ALJ can decide the case. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citation omitted). The decision is not outside that zone of choice simply because the court might have reached a different decision. *Id.* (citing *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001)); *Moore*, 572 F.3d at 522 (holding that the court cannot reverse an ALJ's decision merely because substantial evidence would have supported an opposite decision).

In determining whether the Commissioner's decision meets this standard, the court considers all the evidence in the record, but does not reweigh the evidence. *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers both evidence that supports the ALJ's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607

F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [ALJ's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

## III. DISCUSSION

Claimant alleges the ALJ committed reversible error by (A) failing to provide good reasons for the weight afforded to his treating psychologist's opinions; (B) failing to provide good reasons for the weight afforded to the examining psychologist's opinions; (C) failing to provide a rationale for not including "a sustaining attention without getting distracted" limitation in the RFC; (D) crafting an RFC that did not sufficiently account for his bowel and bladder urgency limitations; and (E) failing to provide good reasons for finding he was not credibly reporting his limitations.

### A. *Relevant Background Facts*

In 2013, Claimant was diagnosed with, and began treatment for, rectal adenocarcinoma. Defendant had resection surgery on November 25, 2013, a loop ileostomy on January 10, 2014, and an ileostomy takedown procedure on December 15, 2014. (Doc. 9 at 3, 6.) Claimant also received two rounds of chemotherapy for his cancer. (*Id.* at 4.) On February 3, 2015, Claimant reported to Dr. Thomas Warren, the oncologist overseeing his chemotherapy treatment, that he was trying to finish course work from the prior semester while taking new classes. (*Id.* at 6.) Dr. Warren and Claimant discussed "chemotherapy brain and the need to recover." (*Id.* (quoting AR 656).) Dr. Warren told Claimant that "[f]atigue can take months and he was under the

impression now that he is down,[2] he would be feeling better." (*Id.*) Claimant has an associate degree in computer operations and worked in various help-desk positions prior to his cancer diagnosis. (AR at 60-61.)

**B.      Whether the ALJ Properly Weighed the Opinion Evidence**

Claimant argues that the ALJ did not properly weigh the opinion evidence of his treating psychiatrist Dwight Schroder, M.D. or the examining psychiatrist Linda Collins, Ph.D.

**1.      Opinion of Treating Psychiatrist Dwight Schroeder, M.D.**

On September 17, 2018, Dr. Schroeder completed a check-box opinion form in which he provided very few supplemental explanations for his opinions. (AR at 1341-49.)

> Dr. Schroeder assessed very significant limitations. He indicate[ed] that the claimant would miss more than 4 days per month and would be off task for 20% or more per day. Further, he opined that the claimant would be "seriously limited" in his ability to remember work-like procedures, set realistic goals or make plans independently of others, work in coordination with or proximity to others without being unduly distracted, complete a normal workday and workweek without interruptions from psychological based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to changes in a routine work setting, or respond appropriately to changes in a routine work setting. He indicated that the claimant would have a marked limitation in his ability to understand, remember, or apply information.

(*Id.* at 22.)

The ALJ gave the opinion little weight for the following reasons:

> This opinion is presented in a "check-box" format with only minimal narrative explanation of the limitations assessed. It does not appear to be

---

[2] Although it is not important to the analysis, I suspect "down" is a typographical error in Dr. Warren's notes. "Done" seems to make more sense in this sentence.

generally consistent with the record as a whole, or with Dr. Schroeder's own treatment notes. The record does establish a mild cognitive impairment. However, it was noted to have improved with treatment. Moreover, the claimant's activities of daily living, such as continuing to handle his own finances, and working on a part-time basis, indicate a higher degree of functionality than that indicated by Dr. Schroeder. Given these factors, this opinion has been given only partial weight.

(*Id.* at 22-23.)

### a.    *Claimant's Arguments*

Claimant argues that the ALJ's "rationale" that Dr. Schroeder's opinion was "'in a "check box" format' was not a sufficient rationale, standing alone, to assign Dr. Schroeder's opinions little weight." (Doc. 10 at 10 (citing *Reed v. Barnhart*, 399 F.3d 917, 921 (8th Cir. 2005) for the proposition that the Eighth Circuit has "never upheld a decision to discount an MMS on the basis that the 'evaluation by box category' is deficient *ispso facto*.") Claimant also argues that contrary to the ALJ's decision, during the relevant period, Claimant continued to report attention and cognition issues to Dr. Schroeder. (*Id.* at 9-10.) Thus, Claimant avers that Dr. Schroeder's notes are consistent with his opinions and the record as a whole. (*Id.* at 10.)

Finally, Claimant argues that the ALJ's reliance on his abilities to handle his own finances and work on a part-time basis were not good reasons to give Dr. Schroeder's opinion little weight. (*Id.* at 11.)

### b.    *Legal Standard for Evaluating Dr. Schroeder's Opinion*

"It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001) (noting internal citations omitted)). An ALJ must "give good reasons" for the weight given to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2). "A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record as a whole.[3] *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (quotation omitted). "Even if the treating physician's opinion is not entitled to controlling weight, it should not ordinarily be disregarded and is entitled to substantial weight." *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015) (citation and brackets omitted). However, a treating physician's opinion can be given limited weight if it contains only conclusory statements, contains inconsistent opinions "that undermine the credibility of such opinions," is inconsistent with the record, or if other medical opinions are supported by "better or more thorough medical evidence." *Id.* (citations omitted). A treating physician's statement that is "not supported by diagnoses based on objective evidence" will not support a finding of disability. *Edwards v. Barnhart,* 314 F.3d 964, 967 (8th Cir. 2003) (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)). If the opinion is "inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight." *Id.* (citation omitted).

When a treating physician's medical opinion is not given controlling weight, the following factors will be examined to determine the weight to give the opinion: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors. 20 C.F.R. § 404.1527(c)(2).

  c.  *Analysis*

Claimant proffers arguments based on three of the Section 404.1527(c)(2) factors: supportability, consistency, and other factors.

---

[3] Under current regulations, a treating physician's opinion is entitled to no special deference. *See* 20 C.F.R. § 404.1520c(c). These regulations were effective as of March 27, 2017. *See* 20 C.F.R. § 404.1527. However, Claimant's claim was filed on March 27, 2016. Thus, the old regulations apply. *See id.*

### i. *Supportability*

"The better an explanation a source provides for a medical opinion, the more weight [the ALJ] will give that medical opinion." 20 C.F.R. § 404.1527(c)(3). "A treating physician's own inconsistency may . . . undermine his opinion and diminish or eliminate the weight given his opinions." *Hacker*, 459 F.3d at 937. In addition, "'[t]he checklist format, generality, and incompleteness of the assessments limit [an] assessment's evidentiary value.'" *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (quoting *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001) (internal brackets omitted)); *Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996) ("A treating physician's opinion deserves no greater respect than any other physician's opinion when the treating physician's opinion consists of nothing more than vague, conclusory statements."); *see also Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) ("[Dr. Hollis's] assessments, however, consist of nothing more than vague, conclusory statements—checked boxes, circled answers, and brief fill-in-the-blank responses. They cite no medical evidence and provide little to no elaboration, and so they possess little evidentiary value. On that basis alone, the ALJ did not err in giving Dr. Hollis's RFC assessments little weight and relying more heavily on other opinions in the record.") (internal quotations and citations omitted). Therefore, a treating source's opinion can be given limited weight if it contains only conclusory statements or inconsistent opinions "that undermine the credibility of such opinions." *Papesh*, 786 F.3d at 1132 (quotation omitted).

The ALJ stated that Dr. Schroeder's opinion was not supported by his own treatment notes. (AR at 22.) To rebut this finding, Claimant cites eight treatment notes from May 2015 to July 2017 that he says show he continued to report attention and cognition issues:

> 2/19/16 – on mental status exam, some decreased memory. (TR 634)
> 1/15/16 – comment relating to short-term memory and Mr. Snyder's medications.(TR 635)

12/18/15 – "Short term memory still a problem" (TR 636)

6/12/15 –reported decreased concentration/memory and on mental status exam, decreased cognition/memory. (TR 641)

5/12/15 – reported decreased concentration/memory and problems with writing a program

5/13/16 – reported decreased concentration/memory and occasional work finding problems. on mental status exam, some decreased cognition/memory. (TR 911)

2/19/16 – on mental status exam, some decreased memory. (TR 634)

7/13/17 – reported decreased energy, trouble remembering instructions and often needing help from wife to make phone calls.6 (TR 1110)

(Doc. 10 at 10.) According to Claimant, these notes demonstrate that he experienced a decrease in memory and cognition during the relevant time period.

Although Claimant cites treatment notes where Dr. Schroeder noted decreased memory and cognition, in a record as large as this one, it is not uncommon that there would be records that both detract from and support the ALJ's decision. *See Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017) ("While it is not surprising that, in an administrative record which exceeds 1,500 pages, Fentress can point to some evidence which detracts from the Commissioner's determination, good reasons and substantial evidence on the record as a whole support the Commissioner's RFC determination and the decision to discount Dr. Waters's opinion."). However, the ALJ must render his decision based on the record as a whole. *Id.* Here, the majority of Dr. Schroeder's treatment notes show Claimant's psychomotor activity, cognition/memory were "ok," his insight and judgment were fair or ok, and his thought processes were logical. (AR at 633, 637-40, 1108-10, 1141-42, 1144, 1158.) Dr. Schroeder's most recent notes in the record—dated March, May, and July 2018—documented "better" concentration and memory, which is consistent with the ALJ's conclusion that although Claimant has mild cognitive impairment, it improved with treatment. (*Id.* at 22-23, 1141-42, 1144.) Even some of the treatment notes Claimant cites state that Claimant's cognition/memory are

"ok." (*Id.* at 635, 636, 1110.) Moreover, the Court cannot reverse a decision simply because evidence would have supported a contrary decision. *See Moore*, 572 F.3d at 522. This factor does not weigh in favor of giving the opinion more weight.

### ii. Consistency

"Generally, the more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that medical opinion." 20 C.F.R. § 404.1527(c)(4).

Although Claimant argues that "Dr. Schroeder's notes are consistent with the record as a whole," Claimant cites no treatment notes in the record that are consistent with Dr. Schroeder's treatment notes or that support the extreme limits Dr. Schroeder included in his opinion.

Claimant was diagnosed with a mild cognitive impairment in March and May 2016 with deficits in "sustained attention, cognitive speed, and initial verbal learning." (AR at 21, 626, 918.) The ALJ noted that by August 2016, ARNP[4] Megan Raddatz stated that Claimant had "no significant psychological symptoms." (AR at 21, 975-76.) Ms. Raddatz stated that Claimant's "[a]ttention span was not decreased." (*Id.* at 976.) In his decision, the ALJ correctly noted that "in subsequent encounters for other conditions, the claimant presented with a grossly normal mental status. (Exhibit 25F)" and that Claimant's mental status throughout the relevant period was grossly normal. (*Id.* at 21-22.) In December 2016, Claimant's memory and cognition were normal. (*Id.* at 1021.) Moreover, not only did Dr. Schroeder document mostly "ok" memory and cognition, as the ALJ stated, "mental status examinations throughout . . . 2017 and into 2018 were generally normal." (*Id.* at 22; 1143, 1145-48, 1151-52, 1154-57, 1159.) In addition,

---

[4] ARNP is an abbreviation for "advanced registered nurse practitioner." Swedish [Hospital], https://www.swedish.org/services/primary-care/types-of-providers/what-is-an-arnp.

the ALJ found, and the record supports, that medication improved Claimant's ability to focus, concentrate, and complete tasks. (*Id.* at *e.g.*, 22, 1115 (July 2017: Claimant finding Concerta helpful and is "able to be more productive with the medication"), 1126 (March 2017: able to focus much better and complete tasks on increased dose of Concerta), 1302 (" He is using [CPAP] with benefit, he will continue this without change. . . . Has found increase in Concerta at last visit helpful, able to focus better and feeling better overall during the day, he will continue this without change."), 1313 (November 2017: Although still struggles with concentration and focus on some days, Concerta is helpful and focus is improved).) An impairment that is controlled with treatment or medication is not considered disabling. *Brace v. Astrue*, 578 F.3d. 882, 885 (8th Cir. 2009) (citations omitted).

The ALJ also found that Claimant's daily activities, including his ability to handle his own finances and ability to work part-time, indicated "a higher degree of functionality" than Dr. Schroeder expressed in his opinion. (AR at 23.) Claimant asserts that these were not good reasons to assign Dr. Schroeder's opinion little weight. Claimant points out that he and his wife explained that Claimant had computer software that reminds him when to pay his bills. (Doc. 10 at 11 (citing AR at 268-69, 280-81).) In addition, Claimant argues that part-time work is not "the strongest indicator of an ability to perform full-time competitive work." (*Id.* (citing SSR 96-8p ("'Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.'").) Claimant also notes that his wife assisted him with his part-time work. (*Id.* at 12 (citing AR at 62, 1110).)

First, even though Claimant needs reminders to pay bills, the ability to pay bills and keep the family budget shows a "higher functioning" than the "marked" limitations

Dr. Schroeder stated Claimant had in his ability to understand, remember or apply information. (AR at 1348.) In addition, Claimant can handle a savings account and use a checkbook and money orders without help or reminders. (*Id.* at 268, 280.) Second, Claimant seems to confuse the ALJ's assessment of his part-time work as but one piece of evidence in the record as a whole with the ALJ equating part-time work to the ability to perform fulltime competitive work.

Claimant currently works from home rating phone calls for an audit center using his own computer. (*Id.* at 58-59.) Claimant testified, "[A] lot of time to make a phone call I have to get my wife to help me get it going. Once I get it going, I seem to be okay." (*Id.* at 62.) This statement merely indicates that Claimant has difficulty getting started on the tasks of his job, not that he is unable to perform the tasks of the job, which he admits he seems to be capable of completing. Moreover, the ALJ never equated Claimant's part-time work with fulltime competitive work. Rather, as with the ability to handle his own finances, the ALJ merely stated that the ability to hold part-time employment is at odds with the severe limitations Dr. Schroeder provided in his opinions. *See Toland v. Colvin*, 761 F.3d 931, 936 (8th Cir. 2014) (claimant's admitted activities, including part-time work, suggested she was capable of doing more than her treating physician indicated); *Markley v. Colvin*, No. C14-3063-LTS, 2016 WL 589699, at *8 (N.D. Iowa Feb. 11, 2016) (holding that ALJ was entitled to discredit physician's opinion because it was inconsistent with claimant's ability to maintain part-time employment) (citing 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did.")).

After a review of the entire record, I conclude that this factor does not weigh in favor of giving the opinion more weight. *See Moore*, 572 F.3d at 522 (the court cannot reverse an ALJ's decision merely because substantial evidence would have supported an opposite decision).

### *iii. Other Factors*

Claimant's argument that the ALJ's "rationale concerning Dr. Schroeder's opinions being "in a check box format was not a sufficient rational, standing alone" to assign the opinions little weight (Doc. 10 at 10) is without merit. The ALJ did not rely only on the format of Dr. Schroeder's opinion as a reason for assigning the opinion little weight. (AR at 22.) However, Dr. Schroeder's failure to explain the reasons for his extreme limitations was a legitimate reason for the ALJ to discount his opinions. *See Thomas*, 881 F.3d at 675.

Claimant also makes the following arguments:

The ALJ's rationale concerning improvement with treatment also belies another error with the ALJ's approach—if treatment eventually improved Mr. Snyder's mental limitations to the extent Dr. Schroeder's limitation opinions were not applicable, the ALJ should have sought a further medical opinion concerning how Mr. Snyder's cognitive impairment limited his ability to work once his condition improved. . . . Moreover, without a finding as to when medical improvement occurred, this rationale is not a good reason for discounting Dr. Schroeder's opinions over the entirety of the claim. *Cf. Newton v. Chater*, 92 F.3d 688, 693-94 (8th Cir. 1996) (concerning the availability pre-determination trial work periods). . . . Some vague notion of eventual improvement well after 12 months from the onset of disability on May 16, 2014 was not a good reason for the ALJ to assign Dr. Schroeder's opinions little weight.

. . .

Concerning medical improvement and effectiveness of treatment which are related the Commissioner is putting on an act. The fact is, in some of these cases, and in Mr. Snyder's case specifically, ALJs deny benefits while dismissing the parts of the record that support an award of disability by arguing treatment at some unknown point became effective to a point of non-disability. In the context of the evaluation of treating physician opinions, as reasonably clear from *Lucus v. Saul*, such vagueness does not amount to a good reason to reject a treating physician's opinions concerning a claimant's work limitations.

(Doc. 10 at 10-11; Doc. 12 at 5.)

Claimant's arguments are based on the false premise that Claimant was, in fact, disabled at some point. The Commissioner correctly notes the following:

> [T]his is not a case where the ALJ found [Claimant] disabled during a certain timeframe, but denied benefits thereafter based upon medical improvement, as [Claimant] seems to imply. . . . Rather, the ALJ never determined that [Claimant] was disabled and instead simply found Dr. Schroeder's opinion inconsistent with evidence showing improvement with treatment (Tr. 22-23). The Eighth Circuit Court of Appeals has held this is a valid reason for discounting opinion evidence. " (Doc. 11 at 16.) *See Romine v. Colvin,* 609 F. App'x 880, 887 (8th Cir. 2015) (ALJ properly discounted opinion that was inconsistent with the record, including evidence that claimant was improving with treatment); *Clevenger v. Soc. Sec. Admin.,* 567 F.3d 971, 975 (8th Cir. 2009) (same).

(Doc. 11 at 16.) Thus, Claimant's arguments are without merit because he seems to be attempting to obfuscate and complicate what is actually the ALJ's straight-forward rejection of a poorly-supported opinion.

Notwithstanding the above, I have sussed-out three underdeveloped arguments that can be quickly dispatched. Claimant argues that the ALJ should have requested a "further medical opinion concerning how [his] cognitive impairment limited his ability to work once his condition improved." (Doc. 10 at 10.) An ALJ is only required to remand for further development of the record when a claimant was prejudiced or treated unfairly by the ALJ's development of the record. *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993) (citing *Phelan v. Bowen*, 846 F.2d 478, 481 (8th Cir. 1988)). Claimant bears the burden to establish he was prejudiced or treated unfairly by the ALJ's failure to develop the record. *See Lacroix v. Barnhart*, 465 F.3d 881, 886 (8th Cir. 2006) (declining to remand a case when the claimant presented "no evidence suggesting that [remand to develop the evidence sought by the claimant] would have yielded" the results the claimant hoped for when evidence before the court did not even hint such evidence existed). Here, Claimant has not even attempted to establish prejudice. The record contains the opinions

of his treating psychiatrist, a consultative psychiatrist, and the state agency reviewing psychological and medical consultants. The administrative record is over 1300 pages and thoroughly documents Claimant's medical and psychological treatment. The ALJ then thoroughly reviewed all the medical evidence before him (AR at 15) and wrote a detailed decision. (*Id.* at 15-25.) Thus, "the ALJ met his duty to fully and fairly develop the record." *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013). Again, this is simply a situation in which the record as a whole did not support Dr. Schroeder's opinion. Remand for another opinion is not necessary.

To the extent Claimant's citation to *Newton v. Chater*, 92 F.3d 688 (8th Cir. 1996) is meant to argue that the ALJ should have considered a pre-determination trial work period, that argument is underdeveloped and need not be considered by the Court. *See Aulston v. Astrue*, 277 F. App'x 663, 664-65, 2008 WL 2066019 (8th Cir. 2008) (declining to address underdeveloped argument) (citing *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006)) (collecting cases for proposition that undeveloped arguments are waived); *Rotskoff v. Cooley*, 438 F.3d 852, 854–55 (8th Cir. 2006) (considering undeveloped argument "abandoned for failure to provide any reasons or arguments for his contentions") (quotation omitted). Moreover, a claimant is entitled to a trial work period only if he was disabled before beginning work. *Newton*, 92 F.3d at 693; 20 C.F.R. § 404.1592(e). Claimant was never found disabled and, unlike the claimant in *Newton*, Claimant here was not improperly denied benefits based on engaging in work that qualified as substantial gainful activity during the time that he was applying for benefits before the ALJ considered whether the claimant was disabled prior to beginning that work. *Id.* at 692-93. The ALJ found that Claimant's work since his alleged onset of disability did not qualify as substantial gainful activity. (AR at 17.) Thus, to the extent Claimant argues that the ALJ should have considered a trial work period for Claimant, I disagree and find that a trial work period is irrelevant in this case.

Finally, *Lucus v. Saul* can be distinguished from the case at bar because the ALJ in that case failed to provide good reasons for giving a treating physician's opinion partial weight. 960 F.3d 1066, 1069 (8th Cir. 2020). The ALJ in this case stated, in part, that Dr. Schroeder's opinion "does not appear to be generally consistent with the record as a whole, or with Dr. Schroeder's own treatment notes." (AR at 22.) The ALJ cited Dr. Schroeder's treatment notes throughout his decision. (*Id.* at 21-23 (citing Exhibits 6F, 17F, 29F, 32F).) While it may have been preferable for the ALJ to have restated those citations in the section of the decision focusing on Dr. Schroeder's opinion, "the ALJ's arguable deficiency in opinion-writing technique had no bearing on the outcome of [the] case and does not require remand." *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011) (internal quotation omitted). Moreover, by the point in the decision where the ALJ summarized Dr. Schroeder's opinions, the reader understood that the extreme limitations proffered by Dr. Schroeder were not in concert with the record as a whole. Thus, I find that the ALJ in this case gave good reasons for giving Dr. Schroeder's opinion the weight he did, unlike the ALJ in *Lucus*.

### iv. Recommendation

I **recommend** the District Court affirm the ALJ's decision on this issue.[5]

### 2. Opinion of Consultative Clinical Neuropsychologist, Linda Collins, Ph.D.

On March 8, 2016, Linda Collins, Ph.D., performed a consultative neuropsychological evaluation of Claimant. (AR at 624-28.) Dr. Collins noted Claimant's history of rectal adenocarcinoma and treatment and stated that Claimant was "subsequently told he has 'chemo brain'" as reasons for the referral for the evaluation. (*Id.* at 624.) Dr. Collins also stated the following:

---

[5] Claimant does not seek to salvage Dr. Schroeder's opinion based on any other 20 C.F.R. § 404.1527(c) factor and I do not find that the other factors, on the whole, weigh in favor of giving Dr. Schroeder's opinion more weight or in favor of remand.

According to Alan and a note from his wife, he forgets new information if he does not write it down. He repeats himself (unaware that he has previously shared that same information). He gets confused when information is presented too fast. At school, he is having difficulty learning Java. During conversations, he sometimes has difficulty thinking of the word that he wants to say; and he occasionally has word substitutions. He has not had problems with driving or with forgetting to take his medications. (*Id.*)

Dr. Collins administered attention, visual, speech/language, verbal learning and memory, and executive functioning tests. (*Id.* at 625-26.) She summarized her test results in the following way:

**SUMMARY OF TEST RESULTS:**
1.  Deficits were noted in sustained attention, cognitive speed, and initial verbal learning.
2.  Verbal memory was not impaired, but it appeared to be lower than his prior ability level.
3.  Test scores were within normal limits on measures of all other cognitive functions assessed.
4.  Significant stress secondary to his medical issues and difficulty in school.

**IMPRESSIONS:**
1.  Diagnostic impression is mild cognitive impairment (MCI).
2.  Based on currently available information, etiology appears to be mixed. Contributing factors include chemotherapy, other cancer drugs that may have been used in treatment, and significant stress.
    .   .   .
(a)  Due to the nature of his current cognitive deficits, he would qualify for special academic services such as extended time limits and testing in a quiet, distraction free environment. He would also benefit from being able to tape record lectures or having access to teachers' notes.
(b)  At home, he should study in a quiet, distraction-free environment.

(*Id.* at 626-27.)

At her feedback session with Claimant and his wife, Dr. Collins told Claimant that although she had evaluated school accommodations, his "deficits in attention, cognitive,

speed, and initial verbal learning would cause similar problems at work as what [he] experienced in school" and "whether or not he would be able to work would depend on the type of job and/or his employer's willingness to provide needed accommodations." (*Id.* at 628.)

The ALJ gave Dr. Collins's opinion partial weight, stating that it was "somewhat vague," that Dr. Collins did not provide a "function by function assessment," and that Dr. Collins did not provide detailed or quantified assessments of Claimant's impairments. (*Id.* at 22.) On the other hand, the ALJ found that Dr. Collins's opinion was generally consistent with the medical evidence as a whole, which supports some degree of limitation due to Claimant's cognitive impairment. (*Id.*)

### a.    *The Parties' Arguments*

Claimant argues that Dr. Collins's opinions "amount to a need for employers to allow Mr. Snyder additional time for task completion and to be provided a work environment free of distractions." (Doc. 10 at 7.) Claimant argues that although the ALJ found the opinion generally consistent with the medical evidence as a whole, he only assigned partial weight to the opinion because he found it vague, which "was not a sufficient reason for not including for [sic] Dr. Collins' attention and distraction-related limitations, which are clearer, in Mr. Snyder's RFC determination." (*Id.*) Thus, Claimant asserts that remand is required for the ALJ to provide a proper explanation for the weight assigned to Dr. Collins's opinion. (*Id.* (citing *Pierce v. Colvin*, No. C15-0072, 2016 WL 4014645 at *5-6 (N.D. Iowa July 26, 2016).)

The Commissioner responds that the ALJ "accounted for any potential issues with sustained attention by limiting plaintiff to only simple work instructions and tasks at and SVP 2 level." (Doc. 11 at 13 (citing AR at 19).) Moreover, the Commissioner asserts that treatment notes post-dating Dr. Collins's opinion show that Claimant's cognitive impairments improved with treatment. (*Id.* (citing AR 18).)

21

### b.     *Legal Standard for Evaluating Collins's Opinion*

Unless a treating source's medical opinion is given controlling weight under 20 C.F.R. § 404.1527(c)(2), the same factors must be considered in deciding the weight to give the medical opinion of an examining medical source: (1) examining relationship, (2) supportability, (3) consistency, (4) specialization, and (5) other factors.  20 C.F.R. § 404.1527(c).

### c.     *Analysis*

Claimant neither grounds his argument in any specific factor nor points to any evidence in the record that supports his argument that remand is required.  Therefore, I am left to guess at what evidence other than the language cited from Dr. Collins's opinion supports Claimant's argument.  *See Singer v. Harris*, 897 F.3d 970, 980 (8th Cir. 2018) (holding that when plaintiff did not direct the court to a place in the record where it could find alleged errors, the court would only consider the arguments that were supported by appropriate citations) (citing *Manning v. Jones*, 875 F.3d 408, 410 (8th Cir. 2017)). Because Claimant mentions the ALJ's finding that Dr. Collins's opinions were supported by the record as a whole, I interpret Claimant's argument as a consistency argument.

"Generally, the more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that medical opinion."  20 C.F.R. § 404.1527(c)(4).

I find that the ALJ is correct that Dr. Collins's opinion did not provide a function-by-function assessment of Claimant's impairments, but that the opinion was consistent with the record as a whole, which supported limitations due to Claimant's cognitive impairment.  (AR at 22.)  As discussed above, in treatment notes, Dr. Schroeder noted that Claimant's memory and cognition were generally "ok," his insight and judgment were fair or "ok," and his thought processes were logical.  (AR at  633, 637-40, 1108-10, 1141-42, 1144, 1158.)  Dr. Schroeder's March, May, and July 2018 treatment notes

documented "better" concentration and memory, which is consistent with the ALJ's conclusion that although Claimant has mild cognitive impairment, it improved with treatment. (*Id.* at 22-23, 1141-42, 1144.) Claimant also had generally normal mental status examinations throughout 2017 and 2018. (*Id.* at 22; 1143, 1145-48, 1151-52, 1154-57, 1159.) Ms. Raddatz repeatedly noted that Claimant's attention span was *not* decreased. (*Id.* at 976, 1129, 1302, 1316.) Moreover, as previously discussed, Claimant's ability to focus, concentrate, and complete tasks improved greatly with use of CPAP and Concerta. (*Id.* at *e.g.*, 22, 1115, 1126, 1302, 1313.) An impairment that is controlled with treatment or medication is not considered disabling. *Brace*, 578 F.3d. at 885. In addition, the ALJ accounted for Claimant's impairments by limiting Claimant to "simple work instructions and tasks at an SVP 2 level. . . . [with no] fast paced assemblyline or piecework types of job duties," "customer service types of job duties," or "teamwork types of job duties." (AR at 19.)

Accordingly, I **recommend** the District Court affirm the ALJ's decision on this issue.[6]

## C.  *Whether the RFC Should have Included a Limitation on "Sustaining Attention Without Getting Distracted"*

On June 14, 2016, Beverly Westra, Ph.D. reviewed Claimant's records for the state agency and made the following conclusions:

> [Activities of daily living] are full range and intact. He drives, uses a computer, handles finances, and takes college coursework. He has difficulty with rapidly presented information or too many inputs at once. He can pay attention for an hour if no distractions. Concentration is difficult under stress. Third party is consistent.

---

[6] Claimant does not challenge the weight given Dr. Collins's opinion based on any other 20 C.F.R. § 404.1527(c) factor and I do not find that the other factors, on the whole, weigh in favor of giving Dr. Collins's opinion more weight or in favor of remand.

Evidence is consistent. Claimant is capable of a range of detailed tasks, but will have difficulty with sustaining attention without getting distracted, sustaining a rapid pace, and working in a high stress environment. Social skills are intact.

(AR at 93.) On December 1, 2016, Russell Lark, Ph.D., affirmed Dr. Westra's opinion as written. (*Id.* at 108.)

The ALJ did not evaluate these opinions or assign them weight in his decision, although he did so with the state agency reviewing medical consultants' opinions, which were included in the same initial and reconsideration denials of benefits. However, the ALJ stated that when crafting Claimant's RFC, he put "special emphasis" on certain exhibits, including Dr. Lark's opinion. (AR at 23.)

### a. *The Parties' Arguments*

Claimant argues that putting "special emphasis" on the opinion requires remand for evaluation of Dr. Lark's specific limitations "relating to sustaining attention without distraction." (Doc. 10 at 4-5.) For support, Claimant relies on *Gann v. Berryhill*, in which the ALJ assigned "significant weight" to an opinion, but did not include limitations from the opinion in the RFC. 864 F.3d 947, 952-53 (8th Cir. 2017). Remand was required to include limitations from the opinion in the RFC because by assigning significant weight to the opinion, the ALJ necessarily meant to include the opinion's limitations in the RFC. *Id.* at 952.

The Commissioner responds that when the ALJ stated that he placed special emphasis on Dr. Lark's opinion affirming Dr. Westra's opinion, the ALJ "clearly convey[ed] that he assigned the opinions great weight." (Doc. 11 at 7.) According to the Commissioner,

[T]he ALJ found that plaintiff could not do fast-paced assembly line, piecework, customer service, or teamwork type job duties and could have frequent contact with coworkers, supervisors, and the general public (Tr. 19). These limitations are consistent with the state agency experts' opinions

that plaintiff's social skills were intact, but he would have difficulty sustaining a rapid pace and working in high stress environments (Tr. 93, 108).

(*Id.*)

The Commissioner further argues that Claimant's argument that the ALJ did not adopt the state agency psychological experts' opinions that Claimant would have difficulty sustaining attention without getting distracted lacks merit because ALJs are not required to adopt any specific physician's opinion verbatim, but rather are tasked with translating limitations into work-related restrictions. (*Id.* (citing *Owens v. Saul*, No. 19-00402-CV-NKL, 2020 WL 2319880, at *5 (W.D. Mo. May 11, 2020) (unpublished).) The Commissioner also avers that Dr. Lark's limitations were not more limiting than the ALJ's RFC determination. (*Id.* at 8.) Finally, the Commissioner argues the record as a whole supports the mental RFC restrictions, citing the same records cited to support arguments related to the ALJ's decisions regarding Dr. Schroeder's and Dr. Collins's opinions. (*Id.* at 8-10.)

> b.    *Analysis*

The crux of the parties' argument is their different interpretations of what the ALJ meant when he stated he put "special emphasis" on Dr. Lark's decision. (AR 23.) As discussed above, by relying on *Gann*, Claimant seemed to argue in his initial brief that "special emphasis" meant some sort of extra weight akin to the "substantial weight" the ALJ assigned to an opinion in *Gann*, which required remand because the ALJ did not incorporate limitations from that opinion into the RFC. (Doc. 10 at 5.) The Commissioner argues that "special emphasis" means "great weight." I find that both parties are wrong.

The ALJ did not use "special emphasis" as a way to assign weight because one of the documents the ALJ listed as getting special emphasis was Dr. Collins's opinion, which

25

the ALJ only assigned partial weight. (AR at 22, 23.) Another document given special emphasis was the opinion of state agency reviewing medical expert Donald Shumate, D.O., whose opinion the ALJ also assigned partial weight. (*Id.*) Other documents given special emphasis were not opinions at all, but were test results or other medical documents. (*Id.* at 23.) Thus, the parties both assume too much.

Claimant, however, is correct that remand is required for the reason proffered in his reply brief: "to allow the ALJ to evaluate and weigh the sustained attention opinions of the agency psychological consultants and explain why they are either included in Mr. Snyder's RFC determination or excluded from Mr. Snyder's RFC determination." (Doc. 12 at 3.)

"SSA explains that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c).

> "Federal regulations provide that every medical opinion in the record *should* be evaluated." *Winters–Baker v. Colvin*, No. 3:14CV359/CJK, 2015 WL 5635243, at *9 (N.D. Fla. Sept. 18, 2015) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)). "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). "[W]hen the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,' [courts] will decline to affirm 'simply because some rationale might have supported the ALJ's conclusion.'" *Id.* (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)). Further, "[a] court may not merely presume that if the ALJ does not discuss a medical opinion, the opinion must have been given little or no weight." *Williams v. Astrue*, No. 3:10–cv–00235–J–JBT, 2011 WL 721501, *3 (M.D. Fla. Feb. 22, 2011). "If the Court makes such a presumption, it in effect abdicates its responsibility to scrutinize the record as a whole to determine whether the conclusions reached as rational." *Id.* (quotations omitted)."

26

*Moore v. Berryhill*, No. CV 16-3585 (MJD/BRT), 2017 WL 6939163, at *9 (D. Minn. Dec. 12, 2017) (discussing examining physician opinion), *R. & R. adopted*, 2018 WL 385465 (D. Minn. Jan. 11, 2018).

Claimant is correct that the ALJ did not explain the weight afforded to Dr. Westra's and Dr. Lark's opinions in his decision. (Doc. 10 at 4.) The ALJ also did not discuss the opinion, which would allow the Court to understand whether the ALJ assigned the opinion much weight or little weight, but only failed to follow the formality of assigning the opinion a specific weight. *See Irvin v. Astrue,* No. 10-0993-CV-W-DGK-SSA, 2011 WL 4067509, at *3 (W.D. Mo. Sept. 13, 2011) ("Here, although the ALJ failed to specifically identify the weight accorded to each physician's opinion, he discussed each opinion at length.").

While it is clear that the ALJ considered this opinion, Section 404.1527(c) requires more than that. Claimants are entitled to an evaluation where the ALJ considers the five familiar factors discussed in conjunction with Dr. Schroeder's and Dr. Collins's opinions, above. "[T]he court cannot resolve the conflicts between [Dr. Lark's] opinion and the ALJ's residual functional capacity assessment without conducting a post-hoc rationalization." *Young v. Colvin*, No. 8:14CV15, 2015 WL 1781524, at *6 (D. Neb. Apr. 20, 2015). I will not speculate as to what weight the ALJ assigned to the opinion and then assume the ALJ did or did not properly include the limitations contained in the opinion into the RFC, especially because some of Dr. Lark's limitations, although admittedly included in an opinion made on an incomplete record, are at odds with the final RFC.

Thus, I **recommend** the District Court remand the case for the ALJ to properly weigh the opinions of Dr. Westra and Dr. Lark. If the weight the ALJ assigns to those opinions changes the RFC, the ALJ must craft a new RFC, conduct a new hearing, and present new hypotheticals to a VE.

***D.***      ***Whether the RFC Needed to Account for Claimant's Post-Rectal Cancer Bowel and Bladder Urgency Issues***

***1.***      ***The Parties' Arguments***

Claimant argues that because the ALJ found Claimant's "bowel and bladder urgency" to be a severe impairment, the ALJ was required to provide more than just a lifting limitation to account for the impairment in the RFC. (Doc. 10 at 13-14.) Specifically, Claimant argues that the ALJ should have included a limitation in the RFC providing for restroom breaks. (*Id.* at 14-15.) Claimant argues the following:

> While some records could reflect his bowel issues more prominently, as the ALJ recognized, the record should have been more fully and fairly developed as to whether, given Mr. Snyder's history that included resection surgery and an ileostomy before the relevant period, a takedown surgery well into the relevant period in December of 2014, irregular bowel patterns for months after that. (See TR 360, 409, 498, 732, 739-40, 745-46). In this claim, where there was a clear period of 12 months or more where Mr. Snyder would have needed to [sic] additional limitations relating to his bowel issues following rectal cancer, the ALJ should have developed the record with additional treating or examining opinion evidence or direct questioning of Mr. Snyder before assuming sufficient medical improvement occurred to the point, at some point in the claim, Mr. Snyder only needed a lifting limitation to account for his bowel and urinary urgency issues.
>
> Because the ALJ's RFC and the hypothetical question to the vocational expert that led to the vocational expert testimony the ALJ relied on to deny Mr. Snyder benefits did not sufficiently account for Mr. Snyder's bowel and bladder urgency limitations, the ALJ's denial of benefits is not supported by substantial evidence and Mr. Snyder's claim should be remanded.

(Doc. 10 at 15.)

The Commissioner responds that the ALJ correctly noted that Claimant responded well to cancer treatment and that while he subsequently reported some bladder and bowel issues with rectal bleeding, there was no indication of a return of the cancer. (*Id.* at 18-

19 (citing 20-21, 23, 576-87, 648-51).)  The Commissioner argues that any mentions of irregular bowel movements or bladder issues were isolated reports and that the "bulk of treatment notes from 2016 through 2018 show that [Claimant] denied having diarrhea, constipation, or abdominal pain."  (*Id.* at 19.)

### 2.   *Analysis*

The Commissioner correctly notes that the ALJ detailed Claimant's cancer treatment, "much of which occurred prior to his May 2014 alleged onset date" in his decision.  (Doc. 11 at 18 (citing AR at 20, 365-66, 406-08, 703-12).)  After his alleged onset date, Claimant underwent a second round of chemotherapy that lasted from June to December 2014 and a December 15, 2014 ileostomy takedown procedure that was performed without event or post-operative complications.  (AR at 20, 494-501, 691-93.)  At the hearing, Claimant testified to the following:

> Q:   All right. And do you take breaks then? What do you do when you take breaks?
> A:   I usually -- I'm usually taking because I have to go to the bathroom.
> Q :   All right. And how often since the rectal surgery and whatnot do you have to use the restroom?
> A:   Depending on how much I've eaten lately or not eaten lately, whatever, it can be every half an hour or, or less. Like coming down here, for example, I haven't really eaten anything. So, I plan to not need to use the restroom as often and doctors, of course, told me that's not good for me either. But I'm trying to believe if you have less in the system you won't need to go as much.

(*Id.* at 63-64.)  Claimant also argues that he was still reporting irregular bowel movements in February 2017 and "rectal bleeding, abdominal pain, and blood in his stools in July of 2018."  (Doc. 10 at 15 (citing AR at 1077, 1334).)

The pages of the administrative record Claimant cites for support must be put into context.  Pages 360, 409, and 498 are surgical notes.  Page 732 is a December 31, 2014 post-operative checkup treatment note following Claimant's ileostomy takedown

procedure. Claimant complained of alternating diarrhea and constipation. (*Id.* at 732.) Claimant was told it may take several months to develop a normal bowel pattern. (*Id.*) Again, on pages 745-46, Claimant complained that he had trouble regulating his bowels and had leakage at times four months post-surgery. He was told that this would improve with time. (*Id.* at 746.) On pages 739-40, Claimant reported on January 30, 2015 that his stools were irregular, not that he was experiencing urgency or the need to use the bathroom more frequently than normal. Page 1077, cited by Claimant for "irregular bowel movements" was associated with a complaint of constipation, not the need to use the bathroom frequently. (AR at 1077-78.) Claimant's mention of "rectal bleeding, abdominal pain, and blood in his stools in July of 2018" was a self-report on a checklist for his orthopedic surgeon when Claimant was being treated for foot problems. (*Id.* at 1334.) Thus, there did not appear to be associated treatment for these symptoms or any explanation regarding the severity of them.

I find that the ALJ need not have included restrictions to allow for restroom breaks in the RFC. The ALJ succinctly and correctly summarized Claimant's cancer treatment in his decision. (AR at 20-21.) The ALJ also put special emphasis on the opinion of state agency reviewing physician Donald Shumate, D.O. and CT testing showing no cancer recurrence. (*Id.* at 23.) The ALJ further restricted Claimant's weight lifting in the RFC "in consideration of urinary and bowel urgency conditions." (*Id.*)

Substantial evidence in the record as a whole supports the ALJ's opinion. Although Claimant cites treatment notes from January 2015 to support his argument, Claimant reported to Dr. Logan Hoxie in 2015 that he was experiencing constipation, not diarrhea. (*Id.* at 736.) In February 2015, Claimant reported that he was "adjusting back to having normal bowel movements." (*Id.* at 656.) The Commissioner is correct that the majority of treatment notes from 2016-2018 document that Claimant denied having diarrhea, constipation, abdominal pain, urinary loss of control, or dysuria. (AR at *e.g.*

749, 917, 975, 1034, 1117, 1128, 1197, 1251, 1283, 1307, 1326.)  Thus, the ALJ's conclusion that Claimant "intermittently reported symptoms of rectal bleeding and constipation" and that there has been no recurrence of cancer is supported by the record as a whole.  On November 28, 2016, Dr. Shumate affirmed the decision of Charles Korte, M.D. on reconsideration.  (*Id.* at 106.)  Dr. Shumate found Claimant capable of performing a range of medium exertional work due to his full range of daily activities and recovery from adenocarcinoma.[7]  (*Id.*)

Lastly, "[b]ecause claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace."  *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citation omitted).  "However, there is no requirement that an RFC finding be supported by a specific medical opinion."  *Id.*  (citing *Meyers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013) (affirming RFC without medical opinion evidence); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012) (same)).  "In the absence of medical opinion evidence, 'medical records prepared by the most relevant treating physicians can provide affirmative medical evidence supporting the ALJ's residual functional capacity findings.'"  *Hensley*, 829 F.3d at 932 (internal brackets omitted) (quoting *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2011)).

While a Social Security claimant bears the ultimate burden of proof, the ALJ nonetheless has a duty to develop the record fully and fairly.  *Vossen v. Astrue,* 612 F.3d 1011, 1016 (8th Cir. 2010).  However, the ALJ must obtain additional information only if the existing record is not sufficient to determine whether the claimant is disabled.  *Halverson,* 600 F.3d at 933. As previously discussed, remand for further development

---

[7] The ALJ assigned partial weight to this opinion based on the record as a whole, including evidence that was not available to the state reviewing physicians, and Claimant's subjective complaints.  (AR at 22.)

of the record is only required when Claimant was prejudiced or treated unfairly by the ALJ's development of the record. *Onstad*, 999 F.2d at 1234.

Thus, contrary to Claimant's assertion, the ALJ was only required to further develop the record "with additional treating or examining opinion evidence or direct questioning" (Doc. 10 at 15) if the record did not provide a sufficient basis from which he can make a decision. *See Kamann*, 721 F.3d at 950 ("[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision.") (quoting *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994)). Here, the record contained sufficient evidence regarding Claimant's rectal cancer treatment and associated bowel and bladder issues from which the ALJ could make his decision. It is telling that none of the records included limitations on activities or work or opined that Claimant was disabled due to complications from his cancer treatment. *See Young v. Apfel*, 221 F.3d 1065, 1069 (8th Cir. 2000) (significant that no examining physicians concluded she was disabled or unable to work). The fact that Claimant failed to, or was unable to, provide evidence to support his claimed restrictions should not be held against the ALJ when the evidence in the record supports the ALJ's decision. *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008). Moreover, as quoted above, Claimant's counsel sufficiently questioned Claimant regarding this issue. Counsel also questioned the VE about the effect "frequent restroom breaks" would have on someone's ability to work. (AR at 78-79.) The ALJ was not required to spend limited hearing time asking questions about an issue counsel had already sufficiently covered, especially when the ALJ instructed Claimant's counsel to, "[G]o ahead and make your case please," when he turned questioning of Claimant over to Mr. Luedeman. (AR at 62.)

Accordingly, I **recommend** the District Court affirm the ALJ's decision on this issue.

*E.*     *Whether the ALJ Properly Evaluated Claimant's Subjective Complaints*

When a claimant suffers from a severe impairment, but the impairment does not meet or equal a disabling impairment listed in the regulations, the ALJ "will consider the impact of [the claimant's] impairment(s) and any related symptoms, including pain, on [the claimant's] residual functional capacity." 20 C.F.R. § 404.1529(d)(4). This determination involves a two-step process in which the ALJ first decides whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms and then evaluates the intensity and persistence of the claimant's symptoms. *Id.* § 404.1529(b),(c). When evaluating the claimant's subjective complaints during the second step, the ALJ considers the objective medical evidence, the claimant's work history, and evidence relating to the following factors ("the *Polaski* factors"): (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) [the claimant's] functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); 20 C.F.R. § 404.1529(c)(3).[8] An ALJ is not required to methodically discuss each *Polaski* factor as long as the ALJ "acknowledge[s] and examin[es] those considerations before discounting [a claimant's] subjective complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (citing *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)).

After considering the factors and evidence, the ALJ determines the extent to which the claimant's symptoms affect the claimant's capacity to perform basic work activities. *Id.* § 404.1529(c)(4). The claimant's "symptoms, including pain, will be determined to

---

[8] The Code of Federal Regulations includes the additional factors of: (1) other treatment the claimant receives for pain relief; and (2) measures the claimant uses to relieve pain "(e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.)." 20 C.F.R. § 404.1529(c)(3)(v),(vi).

diminish [the claimant's] capacity for basic work activities to the extent that [the claimant's] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.*

### 1. Objective Medical Evidence and Dosage, Effectiveness, and Side Effects of Medication

Claimant argues somewhat redundantly that the ALJ should have found that he was at least entitled to a limited period of disability because the ALJ's conclusions that (1) the record demonstrates that Claimant responded well to treatment of his rectal cancer, subsequently reported intermittent bladder and bowel issues with rectal bleeding, but no cancer recurrence; (2) recent records continue to demonstrate improvements in Claimant's sleep and fatigue with CPAP treatment; and (3) Claimant's mild cognitive impairment appears to have improved with treatment were all made without explaining when the improvements occurred. (Doc. 10 at 16.) Claimant relies on the ALJ's hearing decision, which states that Claimant's claim was for "a period of disability and disability insurance benefits." (*Id.* (citing AR 15).) Claimant also asserts that the ALJ should have realized that "some improvement in bowel and bladder function may occur [regarding Claimant's cancer-related symptoms] over the course of the claim" when Claimant had issues with his bowels "for many months" after his ileostomy takedown procedure in December 2014. (*Id.* (citing AR 498, 745-46, 655 [rectal bleeding in November 2015], 752 [constipation and occasional rectal bleeding in January 2016].)

Claimant has failed to demonstrate that he was entitled to a limited period of disability. Although Claimant argues that he did not undergo his ileostomy takedown procedure until six months after his alleged onset of disability date and had "issues with his bowels for many months afterwards," as previously discussed, although Claimant reported some bladder and bowel issues, most post-procedure treatment notes show that

Claimant denied diarrhea, constipation, abdominal pain, urinary loss of control, or dysuria. (AR at *e.g.* 749, 917, 975, 1034, 1117, 1128, 1197, 1251, 1283, 1307, 1326.) Throughout all his briefing, Claimant only cites a smattering of pages related to bladder and bowel issues. (Docs. 10, 12.) None of these pages support Claimant's testimony that he has to use the restroom at least every half hour, not even early in his recovery. (AR at 64.) *See Guilliams*, 393 F.3d at 801 (RFC is what someone can do in spite of his impairments).

Claimant also takes issue with the ALJ's finding that he "continued to demonstrate improvements [with] sleep problems and fatigue, particularly after he started CPAP treatment." (Doc. 10 at 16 (citing AR at 23).) The ALJ gave Claimant the benefit of the doubt regarding effects of his sleep apnea by restricting him to not working around dangerous machinery or driving. (AR at 23.) Claimant does not appear to challenge the finding, and he could not. The finding is supported by substantial evidence in the record as a whole. (AR at *e.g.* 747, 973, 977, 1299.) Rather, Claimant seems to argue that the ALJ should have pin-pointed a date when Claimant's sleep apnea improved. There are two problems with Claimant's insistence on this type of precision. First, although the ALJ found that Claimant's obstructive sleep apnea was a severe impairment, he did not find it disabling. (*Id.* at 17.) It is axiomatic that in order for Claimant to be entitled to a limited period of disability, he first has to be found disabled. Claimant cites no evidence in the record supporting a finding that Claimant's sleep apnea was disabling. Here, the ALJ never found that Claimant's sleep apnea rose to the level of a disability. Second, the ALJ also found that the condition improved with treatment. The two findings are not mutually exclusive: Claimant's sleep apnea is severe, but not disabling, and has improved with treatment.

The same can be said for Claimant's mild cognitive impairment, which was discussed extensively above. Again, the ALJ found Claimant's impairment to be severe,

but not disabling. (AR at 17.) The ALJ also found, and the record as a whole supports, that Claimant had generally normal mental status examinations. (*E.g.* AR at 21-22, 633, 637-40, 1108-10, 1141-42, 1144, 1145-58, 1151-52, 1154-59.) In addition, as previously discussed, Claimant's ability to focus, concentrate, and complete tasks improved greatly with use of CPAP and Concerta. (*Id.* at *e.g.*, 22, 1115, 1126, 1302, 1313.) An impairment that is controlled with treatment or medication is not considered disabling. *Brace*, 578 F.3d. at 885. Thus, the mere fact that the ALJ found that Claimant's impairment improved does not mean that the impairment was ever a disability to begin with. Proving disability was Claimant's burden. *Moore*, 572 F.3d at 523; AR at 62.

### 2. *Daily Activities*

Claimant argues that "the ALJ did not fairly characterize Mr. Snyder's activities and there is no requirement from the agency that a claimant be bedridden in order to receive disability benefits." (Doc. 10 at 17.) He continues,

> This is evident in the Commissioner's encouraging of claimants to try to attempt to work at substantial gainful activity levels while disabled. See 20 C.F.R. § 404.1592(e) (limitation by regulation it cannot begin before the month of the application for benefits); POMS DI 13010.105 Beneficiary Returns to Substantial Gainful Activity (SGA) Within One Year of the Onset Date - Title II, https://secure.ssa.gov/poms.nsf/lnx/0413010105 (explaining the *Barnhart v. Walton* rule that no trial work period is available within one year of a disability onset date) (last accessed May 26, 2020).

(*Id.*)

The ALJ found Claimant's "activities of daily living [were] inconsistent with the degree of limitation which has been alleged." (AR at 23.) In the decision, the ALJ cited Claimant's ability to manage his own finances and to work part-time during his alleged period of disability. (*Id.*) However, the ALJ stated that he considered all the evidence in the record. (*Id.* at 15.) The ALJ was not required to cite every piece of evidence in

the record. *See Wildman*, 596 F.3d at 966 (citing *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)) (an ALJ is not required to discuss every piece of evidence submitted). Importantly, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Id.* (bracket in original).

In addition to taking care of finances and working part-time, Claimant takes care of all of his own personal care, prepares simple meals, cleans, does laundry and household repairs, mows, drives, and shops in stores. (AR at 278-80.) Not only did Claimant attend school fulltime, he also stated that he went to the YMCA on a regular basis, went to movies, visited with friends, and dined out with friends. (*Id.* at 281.)

Claimant's citation to 20 C.F.R. § 404.1592(e) is misplaced because that rule, pertaining to trial work periods, only applies to people who are receiving disability insurance benefits. Claimant was never found disabled. Thus, the rule does not apply to him. Claimant's citation to POMS DI 13010.105 is similarly misplaced because that guidance applies to "[t]tile II beneficiaries, who return to [substantial gainful activity] within one year of their disability onset date." Social Security, *Program Operations Manual (POMS)*, DI 12010.105 Beneficiary Returns to Substantial Gainful Activity (SGA) Within One Year of the Onset Date-Title II, https://secure.ssa.gov/poms.nsf/lnx/0413010105. Again, Claimant was never a beneficiary. As discussed in parts II.A and III.B.1, *supra*, the ALJ properly considered Claimant's part-time work as but another piece of evidence that was inconsistent with Claimant's disability allegations. *See Tindell v. Barnhart*, 444 F.3d 1002, 1006 (8th Cir. 2006) (affirming ALJ's decision, in part, because daily activities, including part-time work, inconsistent with alleged impairments); *Crooks v. Colvin*, No. C13-0019, 2013 WL 6071976, at *10 (N.D. Iowa Nov. 18, 2013) ("The ALJ may properly note Plaintiff's work activity during a period of time in which she alleges disability as a significant factor in finding Plaintiff not credible.") (citing *Tindell*, 444 F.3d at 1006).

### 3. *Claimant's Work History*

Claimant argues that the ALJ failed to evaluate his pre-cancer work history, which is "supportive of his claim for disability." (Doc. 10 at 17.) Failure to mention work history is not reversible error if the ALJ's credibility determination is otherwise supported. *Roberson v. Astrue*, 481 F.3d 1020, 1025-26 (8th Cir. 2007) (declining to reverse the decision based on ALJ's failure to discuss claimant's work history and reasoning that while "[i]t might have been better if the ALJ had referred specifically to Ms. Roberson's work record when determining her credibility . . . . [,] we do not think that the ALJ was required to refer to every part of the record, and we think that the portions of the record that he referred to were sufficient to support his credibility determination."). Here, as discussed above, the ALJ's credibility determination was supported by substantial evidence in the record as a whole. Thus, I find that the ALJ's failure to mention Claimant's work history is not reversible error.

### 4. *Conclusion*

For the above reasons, I **recommend** the District Court affirm the ALJ's credibility determination.

## IV. CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court **affirm the decision of the ALJ in part and reverse and remand in part.**

- The case should be **reversed and remanded** for the ALJ to weigh the opinions of the State Agency Reviewing Psychologists.
- The case should be **affirmed** in all other respects.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as

well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 27th day of January, 2021.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa